### KING & KING et al. v. PORTER et al.
(No. 6269.)

(Court of Civil Appeals of Texas. Austin. Oct. 10, 1923. Rehearing Overruled Nov. 28, 1923.)

**1. Trial ☞140(2)—Uncorroborated testimony of party will not authorize instructed verdict.**

The uncontradicted or uncorroborated testimony of the party to a suit will not authorize or support an instructed verdict.

**2. Garnishment ☞218—Burden of proof as to ownership.**

Answer of garnishee bank that it had certain money belonging to defendant made a prima facie case that the funds belonged to defendant, and, where defendant and interveners entered into a contest of the answer, alleging that the money belonged to interveners, having been furnished to defendant as their agent, they were thereby charged with the burden of proof in the case.

**3. Garnishment ☞220—Ownership of funds held for jury, where testimony of interested party not corroborated.**

Where garnishee bank answered that it had certain moneys in possession belonging to defendant, and defendant and interveners entered into a contest of the answer, alleging that money belonged to interveners, having been furnished to defendant as their agent, *held*, that evidence of the defendant as an interested party to the suit was not corroborated to such an extent that the trial court would have been authorized in instructing a verdict for him.

**4. Evidence ☞597—Where evidence does not warrant instructed verdict, jury's finding to contrary sufficiently supported.**

Where the evidence is insufficient to support an instructed verdict, then a jury's finding thereon to the contrary is sufficiently supported.

Appeal from McLennan County Court; Jas. P. Alexander, Judge.

Action by J. E. Porter against J. F. Arnold, in which the First National Bank of Waco was garnisheed, and in which King & King intervened, claiming ownership of money described as belonging to defendant. There was judgment for plaintiffs and an appeal by intervener and others was dismissed. 229 S. W. 646. Certain questions were certified to the Supreme Court. 252 S. W. 1022. Former judgment set aside, and judgment of trial court affirmed.

W. B. Carrington, of Waco, for appellants.

John P. McGlasson, of Waco, for appellee Porter.

#### On Appellants' Second Motion for a Rehearing.

BLAIR, J. One question raised in this case is, Does this court have jurisdiction to entertain the appeal, since the amount in controversy is alleged to be less than $100? Heretofore this question was certified to the Supreme Court, and on June 30, 1923, the question was answered in the affirmative, by an opinion written by Mr. Justice William Pierson. 252 S. W. 1022. The statement of facts submitted to the Supreme Court was as follows:

"Appellee obtained a judgment against J. F. Arnold for a sum in excess of $100. He sued out a garnishment thereon against the First National Bank of Waco. The bank answered that Arnold had on deposit with it the sum of $51.51. Arnold contested this answer, and alleged that the money on deposit with the bank belonged to King & King. King & King intervened, making the same allegation. Upon the trial of the issue thus raised, judgment was rendered against the bank for $51.51, and that King & King take nothing by reason of their intervention. From this judgment King & King and Arnold perfected an appeal to this court. We held that the amount in controversy on this appeal was less than $100, and dismissed the appeal for want of jurisdiction, as appears from a certified copy of our opinion filed herewith."

The Supreme Court's certificate of the following question is as follows:

"'Has this court appellate jurisdiction of this cause upon the facts herein stated?'

"It is well settled that the jurisdiction in the trial court in proceedings of garnishment is that of the original suit. The question here presented is, Is appellate jurisdiction in garnishment proceedings the same as that of the original suit?

"We think so. A garnishment proceeding is ancillary to and a part of the principal action, and not only must it be brought in the court of the principal action, but when brought after final judgment in the original suit, the court will take judicial knowledge of such judgment. Kelly v. Gibbs, 84 Tex. 148, 19 S. W. 380, 563. Thus its justification and efficacy are grounded in the original action.

"The court in which the original suit was filed had already acquired jurisdiction of the original parties and of the subject-matter of

that suit (upon which the garnishment depends), and of all processes for enforcing its judgment thereon. The garnishment proceeding is ancillary to and a part of the original suit, and the court in that suit having acquired jurisdiction of the subject-matter for all purposes, including the enforcement of its judgment, it necessarily follows that its jurisdiction extends to all issues raised in the enforcement of that judgment, and that its jurisdiction controls the appellate jurisdiction of such issues on appeal.

"The jurisdiction of the Court of Civil Appeals in this case is based upon the fact that the garnishment proceeding is only an incident to the original suit. It is a part of the original suit, and jurisdiction, both of the trial court and of the appellate court, is based upon the original suit as contemplated by the statutes.

"The garnishment proceeding could have been brought in no other court than the one in which the original suit was brought. Simmang v. Ins. Co., 102 Tex. 41, 112 S. W. 1044, 132 Am. St. Rep. 846; Townsend v. Fleming et al. (Tex. Civ. App.) 64 S. W. 1006; Kelly v. Gibbs, 84 Tex. 148, 19 S. W. 380, 563.

"Suits in garnishment are ancillary to and a part of the original suit, and cannot be separated therefrom. The amount in controversy in the garnishment proceeding is not the only jurisdictional fact in it. All rights under garnishment are based upon the existence and the validity of the judgment in the original suit, and the effectiveness and validity of the garnishment stands or falls with said original judgment.

"In Kelly v. Gibbs, 84 Tex. 148, 19 S. W. 563, Judge Gaines, in discussing the relation of an action in garnishment to the original suit, used the following clear reasoning:

" 'In the present case, the principal suit was determined and the judgment rendered before the garnishment proceedings were instituted. But does it follow that the garnishment even in such a case is not to be treated as ancillary and a part of the original suit? That the Legislature intended to so treat it we think is shown by the fact that the statute provides that the writ shall be made returnable to the court in which the original judgment was rendered, and that the cause should be heard and determined in that court, without reference to the amount in controversy. We are of the opinion that upon no other theory can the jurisdiction of the court in many cases be maintained. Let us take a case in which a garnishment has been sued out upon a judgment rendered in the district court, and in which the amount in controversy in the garnishment proceeding is less than $500. Unless the garnishment is merely ancillary to and a part of the principal case, the court would be without jurisdiction to try the issue. But if it be deemed ancillary, the objection that the court is without jurisdiction is obviated. The district court having power to execute its judgments, and the garnishment being but a mode of enforcing execution, it is auxiliary to the original action and a part of it, and as such the district court has power to determine the issues which arise out of it. Being a part of the principal suit, the court will take judicial notice of the judgment, although rendered before the proceeding was instituted, just like it will take notice of the judgment rendered in a suit in which the garnishment was sued out before its rendition.'

"In his opinion on motion for rehearing in this case (Tex. Civ. App.) 229 S. W. 646, Judge Jenkins cites and applies the holding of this court in the case of Simmang v. Insurance Co., 102 Tex. 41, 112 S. W. 1044, 122 Am. St. Rep. 846.

"The opinion in that case wherein it is held that the Supreme Court had jurisdiction of that case, appears to be in conflict with the views expressed by Judge Gaines in Kelly v. Gibbs, supra. Judge Brown, however, announced in that opinion that—

" 'The garnishment proceeding is not an original suit but ancillary to the judgment of the district court which was rendered in favor of Simmang against Geise, being a process for the enforcement of said judgment.' But the holding that the Supreme Court had jurisdiction of that case was in effect a holding that appellate jurisdiction of a garnishment proceeding does not follow or depend upon the appellate jurisdiction of the original action, though its jurisdiction in the trial court is controlled by the jurisdiction of the original action. In this respect the opinion in the case of Simmang v. Insurance Co. is not followed.

"A garnishment is not an original suit, but ancillary to the main one, and for that reason takes its jurisdiction from the main suit. It being ancillary to and a part of the main suit, its jurisdiction is a part of the main suit, both on trial of issues and on appeal. It is necessary for an appellate court to have jurisdiction of the principal action in order to give it jurisdiction in garnishment proceedings; but having jurisdiction of the principal suit, jurisdiction of the ancillary proceeding follows. This was held by Chief Justice Rainey in the case of Childress v. Harmon (Tex. Civ. App.) 176 S. W. 154, wherein he said: 'This court has jurisdiction of this appeal. The basis of the garnishment was a judgment for over $100, which determines the jurisdictional amount.'

"We answer the question in the affirmative."

The Supreme Court having certified the answer to the above question that this court has jurisdiction to hear this appeal upon its merits, and this court having heretofore dismissed the appeal for want of jurisdiction, said judgment is hereby set aside, and this cause is reinstated for our determination upon its merits.

The original opinion in this case having reversed and remanded, the case in main is hereby set aside, and it is the judgment of this court that the judgment of the trial court should be affirmed in toto. All assignments of error were overruled in the former opinion, except the assignment that the trial court erred in failing to give appellants' instructed verdict, upon the ground that the uncontroverted evidence showed the funds to belong to appellants; and we now overrule the same, including the question upon which this court reversed and remanded the case.

[1] The sole question submitted by the court

(256 S.W.)

to the jury was: Who was the true owner of the funds deposited in the name of J. F. Arnold, on the date the garnishment was served? The jury answered the question that J. F. Arnold was the true owner. This court held that the uncontroverted evidence showed that the funds belonged to appellants King & King; and so rendered judgment. We are now of the opinion that we were in error in so doing. It is the well-settled law in Texas that the uncontradicted, or uncorroborated, testimony of the party to a suit will not authorize or support an instructed verdict. Keton v. Silbert (Tex. Civ. App.) 250 S. W. 316, and cases cited thereunder.

[2] In the case at bar, the garnishee bank answered that it had in its possession $51.51 belonging to J. F. Arnold. This, in our opinion, made a prima facie case that the funds belonged to J. F. Arnold. Arnold and interveners King & King entered into a contest of garnishee bank's answer, alleging that the money belonged to King & King, having been furnished to Arnold as their agent. They were thereby charged with the burden of proof in the case, and sought to meet it by the testimony of J. F. Arnold, who is a party defendant in this suit. He testified that, although the account was kept in his own name, three different parties or concerns were in fact interested in it, one Cotton, King & King, and himself; that he was agent as a loan broker for Cotton, who furnished him money from August 7, 1918, to some time in March, 1919, at which time he ceased to represent Cotton as his agent; from March 12, 1919, to April 2d, the date of the service of the garnishment, he was agent for King & King in a like capacity, they having furnished him money to lend; that he intermingled their funds in the bank with his own, and that of Cotton. He introduced his bank book, showing the aggregate deposit for Cotton, King & King, and himself, from August, 1918, to date of garnishment, to be the sum of $2,660.16, $1,060.16 of which he testified belonged to himself and Cotton—$904 belonging to Cotton, the balance to himself, and $1,600 belonging to King & King. He is not corroborated in any way that any of the funds belonged to Cotton, but is corroborated that King & King furnished $1,600 of the total deposits. He introduced a number of checks marked Exhibit E, most of which were payable to "Cash," and signed plain "J. F. Arnold," with no other mark of identification, which aggregated the sum of $1,082.40. These he identified as checks given against his own account and that of Cotton, which on its face constitute an overdraft of $22.24 and this deficit was taken from the amount due King & King. In this he is not corroborated. No books or records as to transactions between himself and Cotton were introduced in evidence. In fact, he testified that none were kept. The unmarked checks, payable to cash, issued by himself and against his own account, furnish no corroboration of any fact, except that he had drawn so much money, whether to pay Cotton, King & King, or himself is not shown, except by his own evidence. He introduced another number of checks, marked Exhibit E-1, aggregating $1,526.25, most of which were payable to "Cash," and signed plain "J. F. Arnold," without any character or mark of identification. These he testified were drawn in the interest of King & King, against their $1,600 deposited in his name.

[3, 4] Taking the two aggregate amounts of all checks given from the total deposit, there is left in the bank the sum of $51.51, which the garnishee bank reported as belonging to J. F. Arnold. There is no evidence to corroborate J. F. Arnold that these are the only checks against the King & King account, except his own; that he had issued theretofore $1,082.40 against the aggregate account, $229.99 of which was drawn after he had become the agent of King & King, which he claims, by a mathematical calculation, reduced the same to a less sum than that furnished him by King & King. He further testified that he made regular reports to King & King, showing the amount of business transacted in their behalf, and that he kept books concerning their business. None of these reports or books were introduced in evidence to corroborate his statement that the checks aggregating $1,526.25 represented King & King's business. These were matters peculiarly within his own power to introduce, and within his own knowledge, and the jury had the right to take such into consideration in passing upon his credibility. We do not pass upon the credibility of the witness, and we find him guilty of no wrongdoing, further than that found by the jury when they rejected his testimony in the trial of the case; but we are of the opinion that his evidence as an interested party to this suit is not corroborated to such an extent that the trial court would have been authorized in instructing a verdict for him. Therefore we are of the opinion that, where the evidence is insufficient to support an instructed verdict, then a jury's finding thereon to the contrary is sufficient to support their verdict.

We are of the opinion that the motion to reinstate the cause dismissed for want of jurisdiction should be granted, and said cause be affirmed upon the merits of appeal, in accordance with this opinion.

Motion granted.

Affirmed.